UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO. 08-140

BETTY JEFFERSON                             SECTION "B" (1)
ANGELA COLEMAN
MOSE JEFFERSON
RENEE GILL PRATT

ORDER AND REASONS

Before the Court are Defendants Betty Jefferson and Mose Jefferson's Motions to Dismiss Lis Pendens and Forfeiture Claims. (Rec. Docs. 130, 138). The motions seek to dismiss lis pendens and forfeiture claims on Betty Jefferson's properties located at 936 Jackson Avenue, New Orleans, and 1725 Valmont Street, New Orleans and the properties located at 2712 and 2714-16 Loyola Ave.[1] and 3311-13 S. Saratoga Street, New Orleans in which Mose Jefferson has an interest. The motions are opposed. (Rec. Doc. 151). The Court heard oral arguments on the motions on June 17, 2009, and subsequently ordered the parties to engage in good faith discussions regarding the motions and the possibility of utilizing a less restrictive means than lis pendens to reasonably protect all parties' interests and to submit a joint report on the discussions.

_____

[1]Michael Fawer, Mose Jefferson's attorney in the case before Judge Lemmon, and Arthur Lemann, Mose's attorney in the present matter, had a recorded mortgage on the Loyola properties to secure payments of their fees in the two cases. On June 29, 2009, ownership of the Loyola properties was transferred from Defendant Mose Jefferson to the two attorneys.

The parties failed to come to an agreement and failed to submit joint reports. After review of the parties' separate reports, the Court held further oral argument on the matter on July 2, 2009. After review of the pleadings, applicable law, and oral argument of the parties, and for the reasons that follow,

**IT IS ORDERED** that Defendants Betty Jefferson and Mose Jefferson's Motions to Dismiss Lis Pendens and Forfeiture Counts (Rec. Docs. 130, 138) are **DENIED** without prejudice to re-urge upon submission of additional evidence of inability to sell or otherwise encumber the subject properties due to the lis pendens.

## BACKGROUND

The original June 4, 2008 indictment against Defendants Betty Jefferson, Angela Coleman, and Mose Jefferson included charges of conspiracy to commit mail fraud and program fraud, aggravated identity theft, program fraud, mail fraud, false statements, tax evasion, and conspiracy to commit money laundering. The indictment contained notices of mail fraud and program fraud forfeiture, aggravated identity theft forfeiture, and money laundering forfeiture. On December 8, 2008, the Government filed a Bill of Particulars informing Defendants of its intent to seek forfeiture of the following properties located in New Orleans: 2712 and 2714-2716 Loyola Ave., 3311-13 S. Saratoga St., 1723-1725 Valmont St., and 936 Jackson Ave. On that same date the Government filed a

Notice of Lis Pendens on the Loyola properties. The Government filed a Notice of Lis Pendens on the S. Saratoga property on December 9, 2008 and notices on the 936 Jackson Ave. and 1725 Valmont St. properties on February 11, 2009. The Government recorded the notices of lis pendens in the Orleans Parish Clerk of Court Mortgage and Conveyance Divisions.

On May 22, 2009, the grand jury returned a superseding indictment against Defendants Betty Jefferson, Angela Coleman, and Mose Jefferson and added Defendant Renee Gill Pratt. The superseding indictment contained many of the same allegations presented in the original indictment; the major difference between the indictments is that Count One of the Superseding Indictment is now a conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The Superseding Indictment also contains notices of forfeiture, specifically notices of racketeering forfeiture, mail fraud forfeiture, and money laundering forfeiture. The racketeering forfeiture notice indicates the Government's intent to seek forfeiture of the same four New Orleans properties referenced in the December 8, 2008 Bill of Particulars: 2712 and 2714-2716 Loyola Ave., 3311-13 S. Saratoga St., 1723-1725 Valmont St., and 936 Jackson Ave. Defendant Betty Jefferson seeks dismissal of the lis pendens and forfeiture counts relative to her properties located at 936 Jackson Avenue and 1725 Valmont Street, and Defendant Mose Jefferson seeks dismissal of the lis pendens and forfeiture

counts relative to the properties located at 2712 and 2714-16 Loyola Ave. and 3311-13 S. Saratoga Street, in which he has an interest.[2] Attorneys for Mose Jefferson, Mr. Lemann and Mr. Fawer, recorded a mortgage on the Loyola Ave. properties as a security for their attorney fees on October 31, 2008, and assert that their mortgage interest is superior to the Government's interest in that property. Additionally, ownership of the Loyola properties was transferred to Attorneys Lemann and Fawer on June 29, 2009.

The Court held oral argument on the motions on June 17, 2009, and ordered the parties to engage in good faith discussions regarding the possibility of utilizing a less restrictive means than lis pendens to protect all parties' interests. (Rec. Doc. 157). The parties were further ordered to submit a joint report on their discussions on or before June 29, 2009. It appears that the Government only met with the attorneys for Mose Jefferson and engaged in no discussions regarding Betty Jefferson's properties. The parties failed to reach an agreement and failed to submit a joint report, choosing instead to submit individual reports. The reports indicate that Mr. Lemann and Mr. Fawer's joint secured interest in the Loyola Ave. property was approximately $250,000.00. Mr. Lemann and Mr. Fawer presented a proposal that involved sale of

---

[2]The Loyola properties were owned by Enterprise Consultants, LLC, ("Enterprise") and the S. Saratoga property is owned by B.E.P. Consulting Services, LLC ("BEP"). Enterprise and BEP are for-profit Louisiana companies controlled by Defendant Mose Jefferson.

the property or use of it as collateral for a bank loan of no more
than $250,000.  If sold, either directly by Lemann and Fawer or to
repay a loan for which the property served as collateral, all
proceeds above $250,000 would be placed in the registry of the
Court.  Lemann and Fawer also suggested that the property be
available as a substitute asset after repayment of the loan.  The
Government ultimately rejected this proposal and offered instead to
withdraw the lis pendens and allow liquidation of the Loyola Ave.
property only on the condition that the entirety of the proceeds be
placed in the Registry of the Court until a conviction was obtained
and a jury ordered the Loyola Ave. property forfeited.  Lemann and
Fawer have indicated their intent to withdraw from representing Mose
Jefferson in both cases (the present case, 08-140, and Case No. 08-
085) in the event the lis pendens is not removed on July 2, 2009.

Defendants assert that the notices of lis pendens cloud the
title of the properties at issue and thereby prevent Defendants from
selling the property with clear title.  Defendants assert that this
alleged inability to sell the property deprives them of proceeds
that could be used to pay their legal fees and other defense costs.
Defendants argue that this amounts to a violation of their Sixth
Amendment right to private counsel of choice.  Defendants assert
that the properties were not purchased with any funds or proceeds
described in the indictment as unlawfully obtained and argue that
the proceeds allegedly related to the properties is greatly

disproportionate to the value of the properties.[3]  Defendants urge

the Court to direct the Government to utilize less restrictive means

of protecting its interests, such as bonds in the amounts alleged

to be associated with the properties or an order directing

Defendants to deposit the amounts into the Registry of the Court

following sale of the properties.

Defendants' primary argument is that the lis pendens is a de

facto seizure which is prohibited because the forfeiture provisions

of 18 U.S.C. 1963, 18 U.S.C. 981(a)(1)(C), 28 U.S.C. 2461, 18 U.S.C.

982(b)(I), and 21 U.S.C. 853 apply only upon conviction and at the

time of sentencing.  Defendants argue that the Government's notices

of lis pendens are therefore deficient because no conviction has

been obtained at this stage of the proceedings.  Defendants also

make a rather tenuous argument that forfeiture, and consequently lis

pendens, cannot be based on mail fraud because mail fraud is not

explicitly listed in 18 U.S.C. 981(a)(1)(C) and the mail fraud

statute makes no independent provision for statutory forfeiture.

Defendants admit, however, that § 981(a)(C) includes "specified

unlawful activity" as defined in 18 U.S.C. 1956(c)(7)(A).  18 U.S.C.

1956(c)(7)(A) in turn includes any offense listed under 18 U.S.C.

1961(1), which does include 18 U.S.C. § 1341 (mail fraud).

---

[3]Betty asserts that the superseding indictment alleges $6,950.00 of allegedly unlawful income was used to maintain the Jackson Ave. property, which is currently listed on the real estate market at $395,00.00.  Similarly, Betty argues that the alleged unlawful income associated with the Valmont property is $2,200.00, while the value of the property is approximately $376,740.00.

Defendants argue, however, that Congress did not intend to include mail fraud in § 981's civil forfeiture list because it could have listed § 1341 explicitly, as it listed § 1344 (bank fraud).

Attorneys for Mose Jefferson further argue that their interest in Mose Jefferson's Loyola Ave. property, procured to secure their fees for his defense, is superior to the Government's interest. In support the attorneys point to the fact that their mortgage interest was recorded prior to the Government's December 8, 2008 filing of its Bill of Particulars and associated Notices of Lis Pendens in the present case.

The Government argues that under Louisiana law *lis pendens* is not a seizure and is, in fact, the least restrictive means of protecting the Government's interests. The Government also argues that the lis pendens does not affect Defendants' Sixth Amendment right to counsel of their choice because the forfeiture statute provides no exception for attorney's fees and Defendants' right to counsel of choice "does not extend to a defendant who insists on representation by an attorney the defendant cannot afford." (Rec. Doc. 151 at 10). The Government further asserts that Defendants' alternative suggestions of a bond or depositing a portion of the proceeds of sale into the registry of the Court are inadequate because RICO may require Defendants to forfeit their entire interests in the properties, not just amounts that can be recognized as related on the face of the indictment. Further, the Government

argues, the determination as to what assets are subject to forfeiture is not determined by the amounts alleged on the indictment but is determined by the court or jury after trial; therefore Defendants' motions to dismiss forfeiture counts are premature.

The Government acknowledges that there is not a specific statutory provision authorizing criminal forfeiture for violations of 18 U.S.C. § 1341 (mail fraud) but argues that criminal forfeiture is authorized under 28 U.S.C. § 2461(c). 28 U.S.C. § 2461(c) states that in the event of conviction, "the court shall order the forfeiture of property ... pursuant to ... section 3554." 18 U.S.C. § 3554 provides for the forfeiture of property in accordance with 18 U.S.C. § 1963 when a defendant has been found guilty of violating 18 U.S.C. § 1962.

## DISCUSSION

**A. Lis Pendens**

**Extent of RICO Forfeiture**

Plaintiffs suggest that the government's interest in the properties, as indicated in the indictment by tainted sums alleged to be connected to the properties, is insubstantial and can be secured by means such as bonds. However, RICO mandates forfeiture of "all property" described in 18 U.S.C. § 1963 (a), which includes:

> (1) <u>any interest</u> the person has acquired or maintained in violation of section 1962;

(2) <u>any</u>
             (A)   interest in;

             (B)   security of;

             (C)   claim against; or

             (D)   <u>property</u> or contractual right of any kind
                   affording a source of influence over;

                   <u>any enterprise which the person has</u>
                   established, operated, controlled, conducted,
                   or <u>participated in the conduct of, in violation
                   of section 1962;</u> and

        (3)  any property constituting or derived from, any
             proceeds which the person obtained, directly or
             indirectly, from racketeering activity ... in
             violation of section 1962.

18 U.S.C. § 1963 (a)(emphasis added).

        The Fifth Circuit in *United States v. Cauble*, 706 F.2d 1322,

1349 (5th Cir. 1983), provided the following explanation regarding

the broad reach of forfeiture under RICO:

        The RICO forfeiture is *in personam*: a punishment imposed
        on a guilty defendant. It deprives that defendant of all
        of the assets that allow him to maintain an interest in
        a RICO enterprise, regardless whether those assets are
        themselves "tainted" by use in connection with the
        racketeering activity.
        ...
        [P]roperty forfeited under RICO need not be "guilty." RICO
        forfeiture is aimed at divorcing guilty persons from the
        enterprises they have corrupted.

*Cauble*, 706 F.2d at 1349, 1350. *See also U.S. v. Busher*, 817 F.2d

1409, 1413 (9th Cir. 1987)(stating, "Section 1963 was designed to

totally separate a racketeer from the enterprise he operates. Thus,

forfeiture is not limited to those assets of a RICO enterprise that

are tainted by use in connection with racketeering activity, but rather extends to the convicted person's entire interest in the enterprise" and *citing Russello v. United States*, 464 U.S. 16, 28 (1983), and *Cauble*, 706 F.2d at 1349-50). The *Cauble* defendant owned a one-third interest in a company which was associated with the defendant's actions in violation of RICO. The Fifth Circuit upheld the jury finding that defendant's one-third share in the company should be forfeited. The court found that the jury "was not required to select only certain of that entity's assets for forfeiture" and further found that a "reasonable juror might have been persuaded that [the] task [of divorcing guilty persons from enterprises they have corrupted] would be accomplished by forfeiting [the defendant's] share of Cauble Enterprises."

The *Cauble* court relied upon the analysis of the Second Circuit in *United States v. Huber*, 603 F.2d 387, 396 (2d Cir. 1979), *cert. denied*, 445 U.S. 927 (1980) and the Fourth Circuit in *United States v. Hess*, 691 F.2d 188, 190-91 (4th Cir. 1982). Under *Huber*, when the RICO enterprise is composed of a number of corporations, the jury must decide which corporations were part of the enterprise. *Cauble*, 706 F.2d at 1349 (*citing Huber*, 603 F.2d at 396). According to the Fifth Circuit's evaluation, the *Hess* court "held that the jury may not find that less than the full amount of the defendant's interest in an enterprise is subject to forfeiture because § 1963 is mandatory. The court concluded that <u>the only issues for the jury</u>

10

are whether the defendant violated RICO and what interest the defendant held in the enterprise." *Cauble*, 706 F.2d at 1349(emphasis added).

The Seventh Circuit has similarly held. In *United States v. Segel*, 495 F.3d 826,838 (7th Cir. 2007), which involved a defendant who was the sole owner of an enterprise found to be tainted by racketeering activity, the court found that under 1963(a), the defendant's "interest in the enterprise subjected 100 percent of the enterprise to forfeiture." Furthermore, the appellate court found as error the verdict question asking the jury "what percentage of [the defendant's] interests were tainted." *Id*. The pertinent factual question was whether the jury found that the defendant had an interest in the enterprise. *Id*. RICO required forfeiture of defendant's entire interest and because defendant was the sole owner of the enterprise, 100 percent of the enterprise was subject to forfeiture.[4] *See also Busher*, 817 F.2d at 1414 (stating, "Once the jury determines that property was acquired, maintained or operated in violation of section 1962, it must find forfeitable the defendant's <u>entire interest</u> in that property")(emphasis added).[5]

---

[4]The court also rejected the defendant's argument that "the government must show what proportion of his executive compensation consisted of racketeering proceeds." *Id*.

[5]Note, however, that the court found that if a defendant makes a prima facie showing that the forfeiture may be excessive under the Eighth Amendment, the district court must consider these constitutional considerations and make a determination "that the interest ordered forfeited is not so grossly disproportionate to the offense committed as to violate the Eighth Amendment."

**Lis Pendens and Protecting the Government's Interests**

"The Government's legitimate interests at the inception of forfeiture proceedings are to ensure that the property not be sold, destroyed, or used for further illegal activity prior to the forfeiture judgment." *U.S. v. James Daniel Good Real Property*, 510 U.S. 43, 58 (1993). The government can secure these legitimate interests through various means short of seizure, such as lis pendens, restraining orders, and occupancy agreements that leave occupants in possession of property pending a final forfeiture ruling. *Id*. at 59 (commenting that "[s]ale of the property can be prevented by filing a notice of *lis pendens* as authorized by state law when the forfeiture proceedings commence"). In evaluating means of protecting the government's interest in proceedings, courts are admonished to weigh "the equities involved" and consider "alternative means besides seizure, such as bonds or a lis pendens." *In Re Ramu*, 903 F.2d 312, 320 (5th Cir. 1990)(reversing the district court's grant of a stay in a civil forfeiture action on the basis of a criminal case in which the property owners were not named)*; see also James Daniel Good,* 510 U.S. at 58. As noted infra in the section of this order on dismissal of forfeiture counts, forfeiture of the property is not determined until after conviction. "The purpose of a notice of lis pendens is to give effective notice to

*Busher*, 817 F.2d at 1415.

12

third persons of the pendency of litigation affecting title to real property." *Whitney Nat'l Bank v. Mc-Crossen*, 635 So.2d 401, 403 (La. App. 4th Cir.1994).

A lis pendens is constraining and the Fifth Circuit has acknowledged that a lis pendens impedes sale of a property. *See Beefy King Int'l v. Veigle*, 464 F.2d 1102, 1104 (5th Cir. 1972).[6] Accordingly, "[t]he jurisprudence has therefore limited the use of this provisional remedy to those cases where the required relief specifically affects the property." *United States v. A Fee Simple Parcel of Real Estate*, 650 F.Supp. 1534, 1543 (civil action in which district court released lis pendens upon finding that the encumbered homestead was not the subject of the forfeiture action; *citing Beefy King*). Despite the restraining properties of lis pendens, "the right to alienate the property still exists." *United States v. Borne*, 2003 WL 22836059 at *3 (E.D.La. 2003)(*citing United States v. Register*, 182 F.3d 820, 836 (11th Cir.1999)). Furthermore, under Louisiana law, the filing of a notice of lis pendens constitutes neither a lien nor a pre-judgment seizure. *Whitney,* 635 So.2d at 403. *See also Borne*, 2003 WL 22836059 at *2 (denying defendants'

---

[6]The Court's research revealed two civil cases in which the court removed the lis pendens. In *United States v. A Fee Simple Parcel*, 650 F.Supp. 1534 (E.D.La. 1987), the Court released the lis pendens upon a finding that the homestead was not the subject of the forfeiture action. In *Beefy King International v. Veigle*, 464 F.2d 1102 (5th Cir. 1972), the Fifth Circuit, applying Florida law, affirmed the district court's dissolution of lis pendens on the ground that the property was not directly affected by the plaintiff's suit against defendants.

motion to lift and/or modify the lis pendens, for discovery, and for evidentiary hearing).  When comparing lis pendens to other means of securing forfeitable property, another section of this Court noted the Eleventh Circuit's explanation that "notices of lis pendens affect only one incident of ownership-alienability whereas other methods of securing potentially forfeitable property are significantly more restrictive." *Borne*, 2008 WL 22836059, at *2 (*quoting United States v. Register*, 182 F.3d 820, 836 (11th Cir.1999)).[7]

Defendants assert that the lis pendens "violates due process of law" and "prevent[s] the effective use of . . . [the] properties prior to trial." (Rec. Doc. 130-2 at 6).  However, Defendants fail to cite any case law regarding the extent of the Government's interest under RICO.  Furthermore, contrary to Defendants' argument, lis pendens does not  "prevent the effective use" of the properties and therefore does not violate due process.  *See United States v. Winston County*, 163 F.3d 1295, 1301 (11th Cir. 1998)(lis pendens not violation of due process).  Lis pendens preserves the Government's interest while providing ownership use of the property.   As evidenced during oral argument on this matter, an owner is free to dwell in and receive rental income from property subject to lis

---

[7]*United States v. Borne* involved the defendants' request for an evidentiary hearing regarding lis pendens that defendants argued would adversely affect their business plans and subject them to loss of income and investment opportunities.

pendens and is even able to transfer his or her ownership interest in the property. Defendants rely heavily on *Ramu*, in which the Fifth Circuit overturned the district court's grant of a stay in a civil forfeiture case. *Ramu* however mentioned means of protecting the government's interest by utilizing means less restrictive than seizure, such as "bonds or lis pendens," and issued no comment regarding the use of bonds instead of lis pendens.

Defendants' arguments that the lis pendens constitutes a de facto seizure are misplaced as Louisiana jurisprudence has specifically found that lis pendens does not constitute a seizure and has referenced the property rights, including personal occupation and use for generation of rental income, that the owner retains with respect to a property subject to lis pendens.

**Sixth Amendment**

The Sixth Amendment guarantees that "in all criminal prosecutions the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Moreover, "the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment." *Wheat v. United States*, 486 U.S. 153, 159 (1988). The guarantee applies for an attorney the defendant "can afford to hire, or who is willing to represent the defendant even though he is without funds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006).

28 U.S.C. § 2461 governs the "mode of recovery" of fines,

penalties, and forfeitures, and under § 2461(c), the government may seek forfeiture "if a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized." Section 2461(c) also authorizes notice of forfeiture in the indictment and states that "if the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code." 18 U.S.C. § 3554 mandates that "[t]he court, in imposing a sentence on a defendant who has been found guilty of an offense described in section 1962 of this title . . . shall order . . . that the defendant forfeit property to the United States in accordance with the provisions of section 1963 of this title.

The Government's argument analogizing *Caplin & Drysdale, Charted v. United States*, 491 U.S. 617 (1989), and forfeiture under 21 U.S.C. 853 is persuasive. As 28 U.S.C. § 2461(c) applies to 18 U.S.C. §3554, which applies to both 18 U.S.C. § 1963 (RICO criminal penalties) and 21 U.S.C. 853 (section 413 of the Comprehensive Drug Abuse and Control Act of 1970), the Court finds the Supreme Court's analysis of forfeiture under 21 U.S.C. § 853 helpful. Furthermore, the forfeiture language of 18 U.S.C. 1963 is almost identical to the

language of 21 U.S.C. 853 evaluated in *Caplin*.[8]  In *Caplin* and *United States v. Monsanto*, 491 U.S. 600 (1989), the Court held that the forfeiture provisions of § 853 contained "no specific exemption for property used to pay bona fide attorney's fees." *Monsanto*, 491 U.S. at 608, 613.  Citing language from § 853(c) that is identical to 18 U.S.C. § 1963(c) and provides that "[a]ll right, title, and

---

[8]18 U.S.C. 1963(a)(3) states:

>(a) Whoever violates any provision of section 1962 of this chapter shall be fined . . . and shall forfeit to the United States, irrespective of any provision of State law–
>
>...
>
>>(3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.
>
>The court, in imposing sentence on such person shall order, in addition to any other sentence imposed pursuant to this section, that the person forfeit to the United States all property described in this subsection.

The language of 21 U.S.C. 853 evaluated in *Caplin* is as follows:

>The forfeiture statute provides, in relevant part, that any person convicted of a particular class of criminal offenses
>
>>"shall forfeit to the United States, irrespective of any provision of State law-
>>
>>"(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
>>
>>* * *
>>
>>"The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed ..., that the person forfeit to the United States all property described in this subsection."

*Caplin*, 491 U.S. at 620 (quoting 21 U.S.C. § 853(a)).

interest in [forfeitable] property ... vests in the United States upon the commission of the act giving rise to forfeiture," the Court offered the following analysis:

> Permitting a defendant to use assets for his private purposes that, under this provision, will become the property of the United States if a conviction occurs cannot be sanctioned.

*Id.*

The *Monsanto* Court further found that "assets in a defendant's possession may be restrained . . . based on a finding of probable cause to believe that the assets are forfeitable." *Id.* at 615. In both cases, the Court concluded that "the Government may-without offending the Fifth or Sixth Amendment-obtain forfeiture of property that a defendant might have wished to use to pay his attorney." *Monsanto*, 419 U.S. at 616 (*citing Caplin*, 491 U.S. 617). The *Monsanto* Court continued:

> Given this holding, we find that a pretrial restraining order does not "arbitrarily" interfere with a defendant's "fair opportunity" to retain counsel. Put another way: if the Government may, post-trial, forbid the use of forfeited assets to pay an attorney, then surely no constitutional violation occurs when, after probable cause is adequately established, the Government obtains an order barring a defendant from frustrating that end by dissipating his assets prior to trial.

*Id.* (citations omitted).

The Fifth Circuit in *United States v. Melrose*, 357 F.3d 493 (5th Cir. 2004), addressed the issue in the context of a civil forfeiture case and a claimant's request that the restraining order

in the civil case be modified to release funds to retain an attorney in a related criminal case. The district court denied the motion after holding an evidentiary hearing to determine whether the government had established probable cause to restrain the assets. Citing *Caplin*, the Fifth Circuit stated, "neither due process, nor the Sixth Amendment right to counsel, requires that assets needed to pay an attorney be exempted from restraining orders or, ultimately, from forfeiture." *Melrose*, 357 F.3d at 500. The court continued, "the constitutional requirement . . . is simply a requirement that the district court in certain circumstances hold a hearing on the restraining order and make a determination that the assets are properly subject to forfeiture." *Id*.[9]

Betty Jefferson has asserted the need to liquidate assets to pay attorney fees. Based upon the far reach of RICO forfeiture provisions which contain no exception for attorney fees and Louisiana law indicating that lis pendens is not a seizure and is in fact one of the less restrictive means of preserving the Government's interest, Betty Jefferson's Motion to Dismiss Lis Pendens is **DENIED**.

**Mortgage of Mr. Lemann and Mr. Fawer**

As noted previously, 18 U.S.C. § 1963(c) states that "[a]ll

---

[9]Courts have often found that because lis pendens is not a seizure, the defendant was not entitled to an evidentiary hearing. *See United States v. Borne*, 203 WL 22836059 (E.D.La. 2003).

right, title, and interest in [forfeitable] property ... vests in the United States upon the commission of the act giving rise to forfeiture." Section 1963(c) also states:

> Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection(l) that he is a bona fide purchaser for value of such property <u>who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section</u>.

18 U.S.C. § 1963(c)(emphasis added). Section 1963(l) establishes the procedure for a third party's assertion of a legal interest in property after forfeiture. The court can amend the forfeiture order in favor of the third party under the following conditions:

> If, after a hearing, the court determines that the petitioner has established by a preponderance of the evidence that --
>
> **(A)** the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> **(B)** the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

18 U.S.C. § 1963(l)(6).

Attorneys Lemann and Fawer assert that their mortgage interest

in the Loyola property is superior to any interest of the Government because they acquired and recorded the mortgage prior to the Government's notice of forfeiture in the present case. However, superiority is not determined by time of filings alone, but requires consideration of whether they "at the time of purchase [were] reasonably without cause to believe that the property was subject to forfeiture under this section." 18 U.S.C. § 1963(c)(emphasis added). Even with such a showing, the law provides for the recognition of the third party's interest after a finding of forfeiture not before. Additionally, the recent transfer of the property to Lemann and Fawer, made well after notice of the Government's interest, may well moot the mortgage interest filed before the Government's notices of lis pendens and any superiority concerns as it relates to the possible forfeiture. Accordingly, Mose Jefferson's Motion to Dismiss Lis Pendens is **DENIED**.

However, considering the admonishment in *Ramu* to weigh "the equities involved" and consider less restrictive means of protecting the interests of the parties, along with significant Sixth Amendment issues at stake here, the denial of Betty Jefferson and Mose Jefferson's Motions to Dismiss Lis Pendens is without prejudice to re-urge upon submission of additional evidence of actual inability to sell or otherwise encumber the subject properties due to the lis pendens. *In Re Ramu*, 903 F.2d 312, 320 (5th Cir. 1990).

## B. Dismiss Forfeiture Counts

Federal Rule of Criminal Procedure 32.2 governs forfeiture in criminal cases and provides that "<u>after</u> entering a guilty verdict or accepting a plea of guilty ... on any count in an indictment or information with regard to which criminal forfeiture is sought, the court shall determine what property is subject to forfeiture under the applicable statute." (emphasis added). "[T]he purpose of the notice of forfeiture in the indictment is to inform the defendant that the government seeks forfeiture as a remedy." *United States v. Puma*, 937 F.2d 151, 156 (5th Cir. 1991). A court cannot enter a judgment of forfeiture unless the indictment contains notice that the Government will seek forfeiture of property as part of any sentence imposed. Fed.R.Crim.P. 32.2(a). Furthermore, the total amount of the funds subject to forfeiture are issues of fact "that must be left to trial." *United States v. Impastato*, 2008 WL 373689, *1 (E.D.La. 2008)(also *quoting United States v. Miller*, 491 F.2d 638, 647 (5th Cir. 1974), "The propriety of granting a motion to dismiss an indictment under [Fed. R.Crim. P. 12] by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determination of facts"). Accordingly,

**IT IS ORDERED** that Defendants Betty Jefferson and Mose Jefferson's Motions to Dismiss Lis Pendens and Forfeiture Counts

(Rec. Docs. 130, 138) are **DENIED** without prejudice to re-urge upon

submission of additional evidence of inability to sell or otherwise

encumber the subject properties due to the lis pendens.

New Orleans, Louisiana, this 8th day of July, 2009.


UNITED STATES DISTRICT JUDGE