# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 08-140** |
| **BETTY JEFFERSON** | **SECTION "B" (1)** |
| **ANGELA COLEMAN** | |
| **MOSE JEFFERSON** | |
| **RENEE GILL PRATT** | |

## ORDER AND REASONS

On July 21, 2009, the Court heard oral argument on Defendant Mose Jefferson's Motion to Dismiss, Strike, and Sever (Rec. Doc. 119),[1] to which Defendant Renee Gill Pratt previously filed a Memorandum in Support (Rec. Doc. 155)[2] and Defendants Betty Jefferson and Angela Coleman moved to adopt in court. After review of the pleadings, applicable law, and oral argument of the parties, and for oral reasons given and for the reasons that follow, the Court **DENIES** Mose Jefferson's Motion to Dismiss, Strike, and Sever (Rec. Doc. 119) without prejudice to reconsider at a future date.

---

[1] The Court notes that following denial of his Motion to Withdraw, attorney Arthur Lemann, III declined to offer oral argument. Michael Fawer, counsel for Renee Gill Pratt, deferred to Arthur Lemann, III's decision regarding oral argument but did present a statement to the Court indicating his intent to file motions, including possibly a motion to dismiss and/or sever, prior to Ms. Gill Pratt's September 30, 2009 deadline for filing pretrial motions. (See Rec. Doc. 171). The Court found that Defendant's written materials on substantive motions here sufficiently addressed all issues that were of interest to the Court. (See Rec. Doc. 187).

[2] Gill Pratt's Memorandum in Support also requested severance for Defendant Renee Gill Pratt, which was discussed during oral argument on Mose Jefferson's Motion to Dismiss, Strike, and Sever. Without prejudice, Pratt's motion is summarily denied, reserving reconsideration if she timely moved for same within set deadline.

(Rec. Doc. 187). With assistance from all counsel of record, the Court will continue to monitor whether further evaluation is needed on the issues of severance and prejudicial impact, including the admission of 404(b) and other evidence, along with double jeopardy claims that might arise since the trial of U.S. v. Mose Jefferson criminal docket number 2:08-cr-00085.

## BACKGROUND

Defendants Betty Jefferson, Angela Coleman, and Mose Jefferson operated various non-profit and for-profit organizations that received grant monies from the State of Louisiana, the U.S. Department of Education ("DOE"), and the U.S. Department of Housing and Urban Development ("HUD"). Both the State of Louisiana and DOE grants were offered to non-profits for charitable and education purposes, while HUD provided housing assistance and federal grants to non-profits for improvements of multi-family dwellings for the elderly. Defendant Betty Jefferson was the president of the board of directors of Greater St. Stephen Manor, Inc. ("Greater St. Stephen"), a Louisiana non-profit corporation which owned and operated a forty-one unit elderly apartment complex located in New Orleans and operating under § 202. Betty Jefferson also controlled non-profits Care Unlimited, Inc. ("CU") and Central City Adult Education Agency, Inc. ("Central City") and controlled and operated various for-profit La. companies that the Government alleges were used by Defendant Betty Jefferson to transfer money from the non-

profits to Defendants and others.  Betty Jefferson was also the Tax Assessor for the 4th Municipal District, Orleans Parish since May 1998.

Betty's daughter, Defendant Angela Coleman, was the president of the board of CU and also owned and operated La. for-profit companies.  Mose Jefferson was chairman of the board of the non-profit Orleans Metropolitan Housing & Community Development, Inc. ("Orleans Metro") and, in that capacity, caused grant applications to be submitted and agreements to be signed with the state. Defendant Mose Jefferson controlled the following for-profit Louisiana companies that the Government alleges received money and benefits from the Defendants' controlled non-profits: Southwind Consultants Inc., and Southwind Consultants, LLC (collectively "Southwind"), Enterprise Consultants, Inc. and Enterprise Consultants, LLC (collectively "Enterprise"), and B.E.P. Consulting Services, LLC ("B.E.P.").  Southwind purchased a building complex at 3313 S. Saratoga St., New Orleans from Orleans Metro in June 2002 and used the property to receive rental payments from several non-profits.  Mose Jefferson and his for-profit companies also operated and received rental payments from an apartment complex located at 2712-2716 Loyola Ave., New Orleans, also known as "Mose Manor." Enterprise and B.E.P. operated out of both 3313 S. Saratoga and Mose Manor.

On June 4, 2008, the grand jury returned an indictment against

Defendants Betty Jefferson, Angela Coleman, and Mose Jefferson, alleging that Defendants conspired to defraud the DOE, HUD, and the State of Louisiana out of funds that the state and federal agencies provided to the non-profits controlled by Defendants for charitable and educational purposes, diverting some of the funds for their personal benefit. The indictment also included charges of conspiracy to commit mail fraud and program fraud, aggravated identity theft, program fraud, mail fraud, false statements, tax evasion, and conspiracy to commit money laundering. On May 22, 2009, the grand jury returned the present thirty-four count superseding indictment, which charges the three previous Defendants, Betty Jefferson, Mose Jefferson, and Angela Coleman, and additional Defendant Renee Gill Pratt with conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") in violation of 18 U.S.C. § 1962(d), specifically alleging that Defendants through their various non-profit and for-profit entities and political positions engaged in a pattern of racketeering activity for the "primary purpose of exercising and preserving power over and within the government of the State of Louisiana, the City of New Orleans, Orleans Parish, and elsewhere, for the financial and political benefits of defendants."

The Superseding Indictment charges Renee Gill Pratt with Count One only, the RICO conspiracy in violation of 18 U.S.C. § 1962(d). In addition to the Count 1 RICO conspiracy, Mose Jefferson, Betty

Jefferson, and Angela Coleman are charged with mail fraud (18 U.S.C. § 1341, 1346) in Count 10. Mose Jefferson is charged with a second count of mail fraud in Count 11 and with false statements (18 U.S.C. § 1001) in Counts 28, 29. The majority of the charges are against Betty Jefferson and Angela Coleman. In addition to the Count 1 conspiracy and Count 10 mail fraud, both Betty Jefferson and Angela Coleman are also charged with mail fraud (18 U.S.C. § 1341, 1346 & 2) in Counts 2-9 and 11, aggravated identity theft (18 U.S.C. § 1028A) in Counts 15-24, money laundering and conspiracy to commit money laundering (18 U.S.C. § 1956) in Count 27, and conspiracy to defraud (18 U.S.C. § 371) in Count 34. The Superseding Indictment also charges Betty Jefferson with mail fraud/honest services mail fraud in Counts 10-14, money laundering and conspiracy to commit money laundering in Count 26, and income tax evasion (26 U.S.C. § 7201) and conspiracy to evade income tax in Counts 30-33. Angela Coleman is also charged with conspiracy to evade income tax.

Defendant Mose Jefferson's charges correspond to counts in the Superseding Indictment as follows:

| | | |
|---|---|---|
| 18 U.S.C. § 1962(d) | RICO conspiracy | Count 1 |
| 18 U.S.C. § 1341, 1346 | mail fraud | Counts 10, 11 |
| 18 U.S.C. § 1001 | false statements | Counts 28, 29 |

In his Motion to Dismiss, Strike, and Sever, Defendant Mose Jefferson argues that the Count 1 conspiracy charge alleges multiple conspiracies and should therefore be dismissed. Specifically, Mose Jefferson asserts that the Superseding Indictment alleges three

conspiracies, a traditional RICO conspiracy, the "I Can Learn" conspiracy, which Defendant asserts was also at issue in his case before Judge Lemmon, and the state law conspiracy. Alternatively, Defendant argues that the alleged state law and "I Can Learn" conspiracies be stricken. Defendant asserts that the "I Can Learn" conspiracy should be stricken on grounds of due process, double jeopardy, speedy trial, and Sixth Amendment right to retained counsel.[3] Defendant argues that the "state law conspiracy" fails to state a federal offense and urges the Court to allow the government to offer this evidence only extraneously under Rule 404(b).

Next Defendant argues that he is improperly joined in Counts 15-24, the aggravated identity theft charges, and Counts 30-34, income tax evasion and conspiracy to evade income tax. Basically Defendant argues that because he is not charged in those counts, there is no basis under Rule 8 to join him in those counts. Alternatively, Defendant argues that these counts should be severed as prejudicial under Rule 14. However, Defendant provides neither case law on prejudice nor any specific explanations as to how

---

[3] Defendants' speedy trial arguments were addressed when the Court considered motions to continue trial and are accordingly moot in light of the Court's grant of a continuance. With respect to the Sixth Amendment right to counsel, Mose Jefferson asserts that one of the reasons the Government added the "I Can Learn" 'conspiracy' to the superseding indictment was to bring in Stacy Simms as a witness in an effort to disqualify Mose Jefferson's counsel, Arthur Lemann. The right to counsel arguments are moot as the Court is taking ample measures to ensure proper application, and to the extent necessary reconciliation, of Defendants' rights to counsel of their choice and conflict free counsel.

Defendant might be prejudiced by the joinder.

Counts 28 and 29 charge Defendant with making false statements in a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI"). Defendant argues that the false statements are not objects of the RICO conspiracy and should be severed under Rule 14 and asserts that "they asperse his not guilty plea to the remaining counts." (Rec. Doc. 119-2).

Finally, Defendant argues that his trial and the trial of Renee Gill Pratt should be severed from the trials of Betty Jefferson and Angela Coleman. Defendant cites preservation of his speedy trial rights, alleged double jeopardy with respect to the "I Can Learn" allegations and the trial before Judge Lemmon,[4] and Mose Jefferson's Sixth Amendment right to counsel.

## DISCUSSION

### I. Multiple Conspiracies

Defendant Mose Jefferson argues that the Count 1 conspiracy charge alleges multiple conspiracies and should therefore be dismissed. Specifically, Defendant asserts that the Superseding Indictment alleges three conspiracies, a traditional RICO conspiracy, the "I Can Learn" conspiracy, and the state law conspiracy. Alternatively, Defendant argues that the alleged state law and "I Can Learn" "conspiracies" be stricken. Defendant asserts

---

[4]The trial before Judge Lemmon concluded in August.

that the "I Can Learn" allegations should be stricken on grounds of due process, double jeopardy, speedy trial, and Sixth Amendment right to retained counsel.[5] Defendant argues that the "state law conspiracy" fails to state a federal offense and urges the Court to allow the government to offer this evidence only extraneously under Rule 404(b).

The Government argues that Defendant misunderstands the breadth of RICO and asserts that the key to the RICO conspiracy is "knowing agreement." The Government further asserts that it is not required to charge or prove the commission of any racketeering acts, predicate acts or overt acts to meet its burden as to Count 1. *See United States v. Salinas*, 522 U.S. 52 (1997). The Government also argues that Count 1 alleges one conspiracy as it alleges the common goal of personal financial and political enrichment through the misuse of Defendants' non-profits, that the nature of the scheme suggests an interdependence of actions, and that each member is not required to participate in every transaction, and that the evidence suggests overlapping participants. *See United States v. Pena-Rodriguez*, 110 F.3d 1120, 1126 (5th Cir. 1997). In addition, the Government argues that Defendant's motion is premature because the question of multiple conspiracies versus a single conspiracy is a

---

[5]Defendant asserts that one of the reasons the Government added the "I Can Learn" 'conspiracy' to the superseding indictment was to bring in Stacy Simms as a witness in an effort to disqualify Mose Jefferson's counsel, Arthur Lemann.

fact question for the jury.  *See United States v. Morgan*, 117 F.3d 849, 858 (5th Cir. 1997).  The government also asserts that should Defendant choose to pursue the multiple conspiracy theory as a defense, he can request a multiple conspiracy instruction to the jury such as the Fifth Circuit's pattern "*Pinkerton*" instruction.[6] *See United States v. Stowell*, 947 F.2d 1251, 1258 (5th Cir. 1991), cert. denied, 112 S.Ct. 1269 (1992).

A conviction based upon a duplicitous indictment that prejudices a defendant may be subject to reversal.  *United States v. Sharpe*, 193 F.3d 852, 870 (5th Cir. 1999).  An indictment may be duplicitous if it joins in a single Count two or more distinct offenses.  *Id*.  The government may include several acts within a single Count where those actions represent a single, continuing scheme provided: "the indictment (1) notifies the defendant adequately of the charges against him; (2) does not subject the defendant to double jeopardy; (3) does not permit prejudicial

---

[6]Fifth Circuit Pattern Jury Instruction 2.22 reads as follows:
**CONSPIRATOR'S LIABILITY FOR SUBSTANTIVE COUNT**

A conspirator is responsible for offenses committed by another [other] conspirator[s] if the conspirator was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of, or as a foreseeable consequence of, the conspiracy.
•
Therefore, if you have first found the defendant guilty of the conspiracy charged in Count ____ and if you find beyond a reasonable doubt that during the time the defendant was a member of that conspiracy, another [other] conspirator[s] committed the offense[s] in Count[s] ____ in furtherance of or as a foreseeable consequence of that conspiracy, then you may find the defendant guilty of Count[s] ____, even though the defendant may not have participated in any of the acts which constitute the offense[s] described in Count[s] ____.

evidentiary rulings at trial; and (4)does not allow the defendants to be convicted by a non-unanimous verdict." *Id*.

To prove a conspiracy, the government must prove beyond a reasonable doubt "that (1) a common agreement or conspiracy existed; (2) the accused knew of the conspiracy; and (3) the accused, with knowledge, voluntarily joined the conspiracy." *United States v. Richerson*, 833 F.2d 1147, 1152 (5th Cir. 1987). The principal considerations in counting the number of conspiracies are (1) the existence of a common goal, (2) the nature of the scheme, and (3)the overlapping of participants in the various dealings. *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1126 (5th Cir. 1997). When examining the number of conspiracies, the Fifth Circuit has also reviewed the scope of the conspiracy, which is judged by the following five factors: (1) time, (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place. *Id*. at n.4; and *United States v. Mitchell,* 777 F.2d 248, 260 (5th Cir. 1986)(finding that the "similarity of time, persons, offenses, places and overt acts among the shipments [of narcotics]" pointed to a single RICO conspiracy).

Where the evidence demonstrates that all of the alleged

co-conspirators directed their efforts towards the accomplishment of a single goal or common purpose, then a single conspiracy exists. *Richerson*, 833 F.2d at 1153. The common goal factor requires one objective, or set of objectives, or an overall objective to be achieved by multiple actions. *Id.* The Fifth Circuit in *Richerson* listed a variety of "common purposes" that had been previously identified by the court in various cases, including "mutual enrichment" in a mail fraud conspiracy case. *Id.* Similarly, after recognizing the broadness of the common goal test,[7] the *Richerson* court held that it could not declare incorrect "the Government statement . . . that the common goal driving all members of the single conspiracy . . . was their <u>personal gain</u> through the fraud" of an oil drilling contractor. *Id.* (emphasis added)(finding that the "overall plan was for all members to obtain some reward for their participation in the conspiracy;" the contracting company's employees "realized personal gains by obtaining money and property through kickbacks, and the vendors realized gains by locking in millions of dollars of business through bribes").

---

[7] After presenting the laundry list of common goals, the *Richerson* court observed, "Given these broad 'common goals' the common objective test may have become a mere matter of semantics." *Richerson*, 833 F.3d at 1153 (common goals identified in previous cases include: (1) the passing of a large quantity of counterfeit bills over a period of time; (2) a series of staged automobile collisions involving a varying pattern of participants, in different locations, over an extended time period; (3) a plan, over three years in process, with varying participants, to buy cocaine; and (4) in a mail fraud conspiracy case, "mutual enrichment" or the amassing of money by false representations about the value of Llano ore and its commercial capabilities). *See also Pena-Rodriguez*, 110 F.3d at 1127 n.6 (*quoting Richerson* supra).

Regarding nature of the scheme, where the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture, where there are several parts inherent in a larger common plan, the existence of a single conspiracy will be inferred. *Richerson*, 833 F.2d at 1154. *See also U.S. v. Wilson*, 116 F.3d 1066, 1075-76 (5th Cir. 1997)(rev'd on other grounds in *U.S. v. Brown*, 161 F.3d 256 (5th Cir. 1998))(stating that Courts look at "the degree of interdependence of the actions of members of the conspiracy-that is, whether the activities of one aspect of the of the scheme are necessary or advantageous to the success of another aspect of the scheme").

The final conspiracy factor of overlapping participants examines "the interrelationships between the participants and various parts of the scheme." *Richerson*, 833 F.2d at 1154. It is not required that every member participate in every transaction to find a single conspiracy, and "where the memberships of two criminal endeavors overlap, a single conspiracy may be found." *Id.* Parties who knowingly participate with core conspirators to achieve a common goal may be members of an overall conspiracy. *Id.* The members of a conspiracy which functions through a division of labor need not have an awareness of the existence of the other members, or be privy to the details of each aspect of the conspiracy. *Id.* (finding that all the Government had to show was that co-conspirators were

conspiring with a core conspirator).

A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense, *Salinas v. United States*, 522 U.S. 52, 63 (1997), and "the government need not always demonstrate an actual agreement among the various conspirators, or even actual knowledge of each other to establish a single conspiracy." *United States v. Mitchell,* 777 F.2d 248, 259 (5th Cir. 1986)(*citing United States v. Sutherland*, 656 F.2d 1181, 1190-91 (5th Cir. 1981), *cert. denied*, 455 U.S. 949 (1982)). While the partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, each member is responsible for the acts of each other. *Salinas*, 522 U.S. at 63. If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators. *Id.* at 64. In fact, a person may even be liable for conspiracy even though he was incapable of committing the substantive offense. *Id.*

In some cases the interdependent nature of the criminal enterprise is such that each conspirator had to have realized that the conspiracy extended beyond his individual role. *Sutherland,* 656 F.2d at 1190-91. *Id.* Such conspiracies are often referred to as "chains" because "the success of the criminal scheme depends on the success of each link in the chain." *Id.* at 1191. Individuals

13

associating themselves with a chain conspiracy know that the
conspiracy "has a scope and that for its success it requires an
organization wider than may be disclosed by his personal
participation." *Id*.

The RICO conspiracy provision, 18 U.S.C. § 1962(d), is more
comprehensive than the general conspiracy offense and broadened
conspiracy coverage by omitting the requirement of an overt act.
*Id*. The RICO conspiracy statute provides: "It shall be unlawful
for any person to conspire to violate any of the provisions of
subsection (a), (b),or (c) of this section." 18 U.S.C. § 1962(d).
Subsection (a) involves the unlawful investment into an enterprise
of proceeds obtained from a pattern of racketeering; subsection (b)
makes it unlawful for a person to acquire or maintain an interest
in or control of an enterprise through a pattern of racketeering
activity; and subsection (c) makes it unlawful for a person
employed by or associated with an enterprise to conduct or
participate in the conduct of the enterprise's affairs through a
pattern of racketeering activity.[8] It is sufficient under RICO that

---

[8]The full text of 18 U.S.C. § 1962 is as follows:
(a) It shall be unlawful for any person who has received any income
derived, directly or indirectly, from a pattern of racketeering
activity or through collection of an unlawful debt in which such
person has participated as a principal within the meaning of section
2, title 18, United States Code, to use or invest, directly or
indirectly, any part of such income, or the proceeds of such income,
in acquisition of any interest in, or the establishment or operation
of, any enterprise which is engaged in, or the activities of which
affect, interstate or foreign commerce. A purchase of securities on
the open market for purposes of investment, and without the intention
of controlling or participating in the control of the issuer, or of
assisting another to do so, shall not be unlawful under this

the conspirator adopt the goal of furthering or facilitating the
criminal endeavor and may do so in any number of ways short of
agreeing to undertake all of the acts necessary for the crime's
completion.[9] *Id*.

The Fifth Circuit in *Sutherland* presented an in-depth analysis
of counting conspiracies that reviewed traditional conspiracy law,
including the "wheel" and "chain" conspiracies, and the RICO

---

subsection if the securities of the issuer held by the purchaser, the
members of his immediate family, and his or their accomplices in any
pattern or racketeering activity or the collection of an unlawful debt
after such purchase do not amount in the aggregate to one percent of
the outstanding securities of any one class, and do not confer, either
in law or in fact, the power to elect one or more directors of the
issuer.

(b) It shall be unlawful for any person through a pattern of
racketeering activity or through collection of an unlawful debt to
acquire or maintain, directly or indirectly, any interest in or
control of any enterprise which is engaged in, or the activities of
which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with
any enterprise engaged in, or the activities of which affect,
interstate or foreign commerce, to conduct or participate, directly or
indirectly, in the conduct of such enterprise's affairs through a
pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of
the provisions of subsection (a), (b), or (c) of this section.

[9] Mose Jefferson cites *United States v. Broce*, 488 U.S. 563, 570 (1989)
for the following legal propositions:

The gist of the crime of conspiracy as defined by the statute is the
agreement ... to commit one or more unlawful acts," from which it
follows that "the precise nature and extent of the conspiracy must
be determined by reference to the agreement which embraces and
defines its objects." A single agreement to commit several crimes
constitutes one conspiracy. By the same reasoning, multiple
agreements to commit separate crimes constitute multiple
conspiracies.

*Broce*, 488 U.S. at 570 (internal cites and quotes omitted). *Broce* involved
the Sherman Act. RICO conspiracies, however, are quite broad as the agreement
is to "acquire or maintain, directly or indirectly, any interest" in the RICO
enterprise, "through a pattern of racketeering activity." 18 U.S.C. § 1962.

"enterprise conspiracy." 656 F.2d at 1189-1195. The wheel conspiracy was explained by analysis of the Supreme Court's decision in *United States v. Kotteakos*, 328 U.S. 750 (1946), which alleged a single conspiracy to obtain government loans by making fraudulent representations. During the *Kotteakos* trial, the Government, by its own admission,[10] presented proof of multiple conspiracies with the sole common element being one man who directed each group. *Sutherland*, 656 F.2d at 1189. The Supreme Court described the multiple conspiracies pattern as "'separate spokes meeting in a common center' but 'without the rim of the wheel to enclose the spokes.'" *Id.* *Sutherland* involved two conspiracies whose common participant was only Sutherland; the court noted, "'If there is not some interaction between those conspirators who form the spokes of the wheel as to at least one common illegal object, the "wheel" is incomplete, and two conspiracies rather than one are charged.'" *Id.* at 1190 *(quoting United States v. Levine*, 546 F.2d 658, 663 (5th Cir. 1977)). Contrast this to the "chain" conspiracy, in which the interdependent nature of the criminal enterprise is such that each conspirator had to have realized that the conspiracy extended beyond his individual role.

*Sutherland* involved a municipal court judge and two other defendants who allegedly collected traffic tickets along with the

---

[10] Note that in *Sutherland*, the Government also admitted that it introduced no evidence of a single conspiracy. 656 F.2d at 1190.

amount of the statutory fine plus a small premium and delivered the
tickets to Sutherland, who would have the cases transferred to his
docket and favorably dispose of them.  The money would then be split
between Sutherland and whichever defendant delivered the ticket.
The Government did not dispute the defendants' claims that the two
persons delivering tickets to the judge did not know of one another.
 656 F.2d at 1186.  In fact, the Government, "by its own admission
. . . introduced no evidence of a single conspiracy but . . . rested
its case on two distinct multiple conspiracies."  *Id*. at 1190.
The Government defended the joint trial not on the basis of
traditional multiple conspiracy law but argued that the defendants
were properly tried together for a single "enterprise conspiracy"
under RICO, contending that "a single conspiracy to violate a
substantive RICO provision may be comprised of a pattern of
agreements that absent RICO would constitute multiple conspiracies,"
regardless of whether there was any agreement between members of the
two separate conspiracies.[11]    *Id.* at 1191.

     The Fifth Circuit rejected the Government's argument, finding

---

[11]The Government's argument continued:

    [T]hese otherwise multiple conspiracies are tied together by the RICO
    "enterprise:" so long as the object of each conspiracy is
    participation in the same enterprise in violation of RICO, it matters
    not that the different conspiracies are otherwise unrelated. Thus,
    the government argue[d] that it need not demonstrate any connection
    between [the defendants delivering the tickets]  because the two
    conspiracies at issue each involved the same RICO enterprise the
    Municipal Court of the City of El Paso.
*Id.*

17

that RICO's expansion did not do away with a finding of agreement but that it "provide[d] a new criminal objective by defining a new substantive crime." *Id.* at 1192. The court explained that what tied together a series of agreements that pre-RICO would be considered multiple conspiracies "is not the mere fact that they involve the same enterprise, but is instead as in any other conspiracy an 'agreement on an overall objective.'" *Id.* at 1192-93. The court further commented, "Taken to its logical extreme, a rule allowing the joint trial of otherwise unrelated conspiracies solely on the basis of their relationship to a common enterprise the rule which the government advocates in this case leads to ridiculous results." *Id.* at 1194. The Fifth Circuit summed up the rule of RICO and multiple conspiracies as follows:

> (1) a pattern of agreements that absent RICO would constitute multiple conspiracies may be joined under a single RICO conspiracy count if the defendants have agreed to commit a substantive RICO offense; and (2) such an agreement to violate RICO may, as in the case of a traditional "chain" or "wheel" conspiracy, be established on circumstantial evidence, i.e., evidence that the nature of the conspiracy is such that each defendant must necessarily have known that others were also conspiring to violate RICO.

*Id.* at 1194.[12]

_____

[12]The Fifth Circuit's analysis of this issue centered largely on clarifying an earlier ruling, *United States v. Elliott*, 571 F.2d 880 (5th Cir.1978), cert. denied, 439 U.S. 953 (1978), which the Government relied upon for its contention that no agreement between members of the separate conspiracies was necessary under RICO. The court found in Elliott that a series of agreements that pre-RICO would have constituted multiple conspiracies could be tried as a single RICO "enterprise" conspiracy. *Id.* at 1192. The court noted however that this finding rested in large part upon proof of a traditional chain conspiracy in which each defendant must

Other Fifth Circuit cases involving the question of multiple conspiracies and RICO include *United States v. Mitchell*, 777 F.2d 248 (5th Cir. 1985), and *United States v. Diecidue*, 603 F.2d 535, 546 (5th Cir. 1979). *Mitchell* involved a RICO conspiracy centered around narcotics trafficking. Finding that the "similarity of time, persons, offenses, places and overt acts among the shipments" pointed to a single RICO conspiracy, the *Mitchell* court rejected the defendants' arguments that separate transactions, which were not identical and were at different locations and did not always involve the same defendants, each constituted a different and distinct conspiracy rather than one single RICO conspiracy. *Mitchell*, 777 F.2d at 259-60. The court further found "that most of the defendants were aware of and in fact participated with the other defendants at some point in the many transactions that took place." *Id.* The court concluded:

---

necessarily have known that others were also conspiring to participate. *Id.* at 1193. The court provided the following analysis:

> To be sure, the government did not prove in *Elliott* that each of the conspirators had explicitly agreed with all of the others to violate the substantive RICO provision at issue. However, the government did prove that, as in a traditional "chain" conspiracy, the nature of the scheme was such that each defendant must necessarily have known that others were also conspiring to participate in the same enterprise through a pattern of racketeering activity. We found the facts sufficient to demonstrate that the defendants knew they were "directly involved in an enterprise whose purpose was to profit from crime," and that each knew "that the enterprise was bigger than his role in it, and that others unknown to him were participating in its affairs." The agreement among all of the defendants in *Elliott* was an implicit one, but it was an agreement nonetheless.

*Id.* (citations omitted).

The unified purposes of the conspiracy to violate drug and anti-racketeering laws, the interconnections among the parties and events, the nature of the statutory offenses charged, the unity of the time period in which the conspiracy was proved to have occurred, the similarity of the places where the conspiracy and overt acts occurred, and the scope of the criminal offense which the government sought to punish lead to the inescapable conclusion that a single conspiracy was alleged and proved.

*Id.*

In *Diecidue*, the defendants alleged that the Count One RICO conspiracy charge to violate 18 U.S.C. § 1962(c) was duplicitous and alleged "separate conspiracies to form an enterprise and conduct its affairs through a pattern of racketeering activity, to join an existing enterprise, to engage in the purchase and sale of cocaine, to possess and distribute counterfeit currency, and to possess and attempt to sell stolen U.S. Treasury bills." 603 F.2d at 546. The court found that § 1962(c) could encompass the various acts and stated, "The allegations addressed to the various substantive offenses committed as part of the conspiracy are merely descriptive of the single overall agreement and do not render the count duplicitous." *Id.* (*citing Braverman v. United States*, 317 U.S. 49, 54 (1942)).

Finally, a finding that the evidence shows one or multiple conspiracies is a question of fact for the jury. *United States v. Morgan*, 117 F.3d 849, 858 (5th Cir. 1997). A defendant can raise the claim of multiple conspiracies as a defense and request the appropriate jury instruction. *United States v. Stowell*, 947 F.2d

20

1251, 1258 (5th Cir. 1991), cert. denied, 112 S.Ct. 1269 (1992).
"If the government sufficiently supports its charge of a single
conspiracy, evidence at trial of multiple conspiracies does not of
itself create a material variance with the indictment; at most, such
evidence creates a fact question and entitles the defendants to a
jury instruction on the possibility of multiple conspiracies."
*United States v. Barraza*, 853 F.2d 288, 291 (*quoting United States
v. Sutherland*, 656 F.2d 1181, 1189 n.5 (5th Cir. 1981), *cert.
denied*, 455 U.S. 949 (1982)).[13]

The Superseding Indictment appears to satisfy the *Richerson* and
*Pena-Rodriguez* requirements of common goal, nature of the scheme,
and overlapping participants. The common goal alleged is "personal
financial and political gain," which is analogous to the goals of
"personal gain" and "mutual enrichment" previously upheld by the
Fifth Circuit. *See Richerson*, 833 F.2d at 1153. The facts as
alleged in the Superseding Indictment support the common goal
allegation as stated.

The nature of the scheme alleged is the funneling of grant
funds through the enterprise-in-fact, which the Government asserts
consisted of Defendants, their various non-profit and for-profit
entities, and political positions. In such a scheme "the activities

---

[13]The Fifth Circuit in *United States v. Barraza* found that in a 17 week
trial with 159 witness and 21 defendants and six days of jury deliberation,
that the multiple conspiracy issue was resolved when the jury delivered its
verdict, which acquitted seven defendants on all counts and found six
defendants not guilty as to the conspiracy to commit racketeering count.

of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture." *Id*. at 1154. For example, before funds could be funneled, they had to be procured. Such procurement, the Government alleges, was achieved through the application for grants by multiple defendants and the influence and efforts of defendants through their political positions. Once procured, money had to be funneled to and through the non-profits and for-profits, either prior to conversion for personal gain or to conceal such conversion. Accordingly, the conspiracy as alleged contains multiple parts "inherent in a larger common plan," which, under *Richerson*, infers "the existence of a single conspiracy." *Id*.

The composition of the enterprise-in-fact and the various actions of its participants satisfy the overlapping participants requirement. The conspiracy alleged is not a "wheel" type conspiracy. The various transactions and groupings of those transactions, such as grants to CU and various resultant alleged misappropriations versus grants to Central City, allegedly involved overlapping defendants and is therefore more closely analogous to the specific and separate narcotics shipments described in *Mitchell*. Also as in *Mitchell*, the acts alleged in support of the conspiracy indicate a similarity of time, persons, and acts. Additionally, the Superseding Indictment indicates an awareness by defendants of and participation with the other defendants at some point in the various

transactions that took place or at the least, due to the nature of the scheme an awareness that others must have also been conspiring. Accordingly, the Court finds that the Superseding Indictment alleges one RICO conspiracy in Count 1. The question of multiple conspiracies is a fact question for the jury, and Defendants can request an appropriate jury charge. As noted in *Sharpe*, any possible prejudice can be prevented by limiting jury instructions, careful and deliberate evidentiary rulings, and the requirement of a unanimous verdict. *United States v. Sharpe*, 193 F.3d 852, 870 (5th Cir. 1999).

The Court further finds no grounds for granting Defendant's alternative request that allegations associated with the state law violations and the "I Can Learn" software be stricken. While the Court is concerned with the propriety of pursuing state law violations under the guise of a federal RICO conspiracy, the Superseding Indictment does not charge state law violations and does not appear to pursue those acts per se. Rather, the alleged state law violations are presented to establish the existence of the alleged RICO enterprise and a pattern of racketeering activity. Their inclusion in the Superseding Indictment "notifies the defendant adequately of the charges against him" and, as explained below, "does not subject the defendant to double jeopardy." *Sharpe*, 193 F.3d at 870. Accordingly, the Court denies Defendant's request to strike those allegations from the Superseding Indictment.

## II. Double Jeopardy

Mose Jefferson's Double Jeopardy argument also fails. "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Burks v. United States*, 437 U.S. 1, 11 (1978), *cited by United States v. Severns*, 559 F.3d 274 (5th Cir. 2009). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions," the Double Jeopardy Clause is not violated when "each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932), quoted by *Mitchell*, 777 F.2d at 264; *see also United States v. Dixon*, 509 U.S. 688, 696-97 (1993)(restating the *Blockburger* "same-conduct" test). Furthermore, "a substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes." *United States v. Felix*, 503 U.S. 378, 389 (1992).

When evaluating double jeopardy rights of a defendant receiving concurrent sentences on marijuana conspiracy counts and a RICO conspiracy count, the Fifth Circuit found no double jeopardy violation because "each provision require[d] proof of a fact that the other [did] not." *Mitchell*, 777 F.2d at 264. The *Mitchell* court noted that the "two sections are in separate **statutes** and are intended to deter two different kinds of activity-racketeering on the one hand and narcotics violations on the other." *Id*. The court

24

specifically noted that 18 U.S.C. § 1962(d) "requires proof of an 'enterprise' engaged in a 'pattern of racketeering activity,' but section 846 does not. *Id.*

Although both the indictment in Criminal Action No. 08-085 and the Superseding Indictment in the present case reference the "I Can Learn" software, the indictment in Case No. 08-085 presents statutory charges against Mose Jefferson that allege conspiracy to commit bribery (18 U.S.C. § 371), bribing an agent of an organization receiving federal funds (18 U.S.C. § 666(a)(2)), money laundering (18 U.S.C. § 1956(h)), and obstruction of justice (18 U.S.C. § 1512(b)(3)). These charges are in separate statutes than and differ from those in the Superseding Indictment before this Court, which references the "I Can Learn" software as evidence of the RICO conspiracy in violation of 18 U.S.C. § 1962(d). As observed in *Mitchell*, "18 U.S.C. § 1962(d) requires proof of an 'enterprise' engaged in a 'pattern of racketeering activity,' but the statutes charged in Case No. 08-085 do not. Accordingly, the Court finds no risk of double jeopardy at this time and therefore finds no need to strike, sever, or dismiss on that basis.

## III. Severance

Mose Jefferson and Renee Gill Pratt both argue that their trials should be severed from the trials of Betty Jefferson and Angela Coleman. Mose Jefferson argues that his trial should be severed on the basis of his speedy trial rights, double jeopardy

with respect to the "I Can Learn" transaction, and his Sixth Amendment right to counsel. Renee Gill Pratt, who consents to a joint trial with Mose Jefferson, bases her trial severance argument on speedy trial rights and severe prejudice. Mose Jefferson also argues that he is improperly joined in Counts 15-24, the aggravated identity theft charges, and Counts 30-34, income tax evasion and conspiracy to evade income tax, and further argues that Counts 28 and 29, which charge him with making false statements, should be severed as they are not objects of the RICO conspiracy. Defendants' speedy trial arguments were addressed when the Court considered motions to continue trial and are accordingly moot in light of the Court's grant of a continuance. Similarly, the Sixth Amendment right to counsel arguments are moot as the Court is taking ample measures to ensure proper application, and to the extent necessary reconciliation, of Defendants' rights to counsel of their choice and conflict free counsel. Mose Jefferson's double jeopardy argument was addressed in Section II of this Order and Reasons. Accordingly, the only argument remaining for consideration is the assertion of prejudice, especially as it relates to evidence that would be inadmissible against Gill Pratt and Mose Jefferson.

Joinder of both defendants and offenses are addressed in Fed. R. Crim. P. 8; while severance or other relief for prejudicial joinder is governed by Rule 14. Fed. R. Crim. P. 8 states:

(a) Joinder of Offenses. The indictment or information

may charge a defendant in separate counts with 2 or
more offenses if the offenses charged — whether
felonies or misdemeanors or both — are of the same
or similar character, or are based on the same act
or transaction, or are connected with or constitute
parts of a common scheme or plan.

(b)  Joinder of Defendants. The indictment or information
may charge 2 or more defendants if they are alleged
to have participated in the same act or transaction,
or in the same series of acts or transactions,
constituting an offense or offenses. The defendants
may be charged in one or more counts together or
separately. All defendants need not be charged in
each count.

Fed. R. Crim. P. 14 provides:

(a)  Relief. If the joinder of offenses or defendants in
an indictment, an information, or a consolidation
for trial appears to prejudice a defendant or the
government, the court may order separate trials of
counts, sever the defendants' trials, or provide any
other relief that justice requires.

"The propriety of joinder under Rule 8 is determined by the
initial allegations of the indictment, which are accepted as true
absent arguments of prosecutorial misconduct." *United States v.
Harrelson*, 754 F.2d 1153, 1176 (5th Cir.1985)(citations omitted).
Rule 8 is "satisfied by allegation of an overarching conspiracy that
encompasses the substantive offenses charged." *United States v.
Krout*, 66 F.3d 1420, 1429 (5th Cir.1995). *See also United States
v. Tettleton*, 2009 WL 1174358, at *4 (W.D.La. April 29,
2009)(finding indictment to allege an overarching conspiracy
encompassing the offense charged and denying motions to sever).

The Fifth Circuit has consistently held that when persons are

indicted together, they should be tried together.  *United States v. McKinney*, 53 F.3d 664(5th Cir.1995); *United States v. Wilwright*, 56 F.3d 586 (5th Cir.1995); *United States v. Boyett*, 2006 WL 3313746, *1 (W.D.La. Nov. 14, 2006).  This rule is especially strong when defendants are charged with a conspiracy.  *United States v. Martinez-Perez*, 941 F.2d295 (5th Cir.1991); *Boyett*, 2006 WL 3313746 at *1.  Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'"  *Zafiro v. United States*, 506 U.S. 534, 537,(1993) (*citing Richardson v. Marsh*, 481 U.S. 200, 210 (1987)).

## A.  Trial Severance

As stated previously, the only argument remaining for consideration is the assertion of prejudice, especially as it relates to evidence that would be inadmissible against Gill Pratt and Mose Jefferson. Gill Pratt's severe prejudice argument is based on the fact that most of the charges and, presumably most of the evidence, relate exclusively to Betty Jefferson and Angela Coleman. Gill Pratt also argues that most of this evidence against Betty Jefferson and Angela Coleman would be inadmissible against Gill Pratt and Mose Jefferson.

Fed. R. Cr. P. 14 provides that a court may grant a severance of defendants when it appears that a defendant will be prejudiced by a joint trial.  Even if prejudice is shown, Rule 14 does not require severance; "rather, it leaves the tailoring of the relief

to be granted, if any, to the district court's sound discretion."
*Zafiro*, 506 U.S. at 535, 538-39 (finding that Rule 14 does not
require severance as a matter of law when co-defendants present
"mutually antagonistic defenses").    To justify severance of
co-defendants, the movant must show that he would suffer "specific
and compelling prejudice against which the court [is] unable to
afford protection," such as through a limiting instruction, and
"that this prejudice [would] result[] in an unfair trial." *United
States v. Kaufman*, 858 F.2d 994, 1003 (5th Cir. 1988) (*citing United
States v. Toro*, 840 F.2d 1221, 1238 (5th Cir. 1988)).

When defendants have been properly joined under Rule 8(b), a
"district court should grant a severance under Rule 14 only if there
is a serious risk that a joint trial would compromise a specific
trial right of one of the defendants, or prevent the jury from
making a reliable judgment about guilt or innocence." *Zafiro*, 506
U.S. at 539; *see also United States v. Tarango*, 396 F.3d 666 (5th
Cir. 2005) (*quoting Zafiro* and affirming trial court's grant of new
trial after finding prejudice to a defendant when evidence pertained
predominately to co-defendant who was being tried in absentia and
that much of that evidence was inadmissible against defendant).
When many defendants are tried together in a complex case and they
have markedly different degrees of culpability, this risk of
prejudice is heightened and might occur when evidence that the jury
should not consider against a defendant and that would not be

admissible if the defendant were tried alone is admitted against a co-defendant. *Zafiro*, 506 U.S. at 539 (*citing Bruton v. United States*, 391 U.S. 123(1968)). Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial.

However, a disparity of evidence in a trial involving multiple defendants does not in and of itself constitute prejudice, and the risk of prejudice will vary with the facts in each case. *United States v. Tarango*, 396 F.3d 666, 674 (5th Cir. 2005). When a joint trial puts evidence before the jury that would not be admitted against a defendant tried separately, the court closely examines that evidence, its "spillover" potential, and whether a jury instruction to consider it only against the defendant against whom it was admitted can be truly effective. *United States v. Simmons*, 374 F.3d 313, 318 (5th Cir. 2004). When considering "spillover" potential of evidence that would not be admitted against a defendant tried separately, the court evaluates whether the evidence is "so complicated ... as to prevent the jury from separating the evidence and properly applying it only to those against whom it was offered." *Id*. Evaluating the complexity of evidence is necessarily a fact-specific inquiry. *Id*.

With facts that are relatively easy to sort, adequate jury instructions can protect against prejudice. Such instructions explain the differences between the counts. For example, the Fifth

Circuit in *Simmons* approved the following jury instructions:

> A separate crime is charged against one or more of the
> defendants in each count of the indictment. Each count,
> and the evidence pertaining to it, should be considered
> separately. Also, the case of each defendant should be
> considered separately and individually. The fact that you
> may find one or more of the accused guilty or not guilty
> of any of the crimes charged should not control your
> verdict as to any other crime or any other defendant. You
> must give separate consideration to the evidence as to
> each defendant.

*Id.*

Accordingly, the mere presence of a spillover effect does not
ordinarily warrant severance, and "attorneys can utilize tools such
as cross-examination and requests for specific limiting instructions
to lessen any spillover effect." *Id.* at 318, 319. "Juries are
presumed to follow instructions," and courts often utilize measures
such as limiting instructions to cure any risk of prejudice.[14]
*Zafiro*, 506 U.S. at 540. *See also United States v. Harrelson*, 754
F.2d 1153, 1175 (5th Cir. 1985)(stating, " Our Circuit's view of

---

[14]The Supreme Court in *Zafiro*, when reviewing jury charges quite similar
to those before the Fifth Circuit in *Simmons*, proffered the following
evaluation of the ability of those charges to cure prejudice:

> The District Court properly instructed the jury that the Government
> had "the burden of proving beyond a reasonable doubt" that each
> defendant committed the crimes with which he or she was charged. The
> court then instructed the jury that it must "give separate
> consideration to each individual defendant and to each separate
> charge against him. Each defendant is entitled to have his or her
> case determined from his or her own conduct and from the evidence
> [that] may be applicable to him or to her." In addition, the District
> Court admonished the jury that opening and closing arguments are not
> evidence and that it should draw no inferences from a defendant's
> exercise of the right to silence. These instructions sufficed to cure
> any possibility of prejudice.

Zafiro, 506 U.S. at 541(citations omitted).

such "spill over" or "cumulation" arguments is . . . [that] 'the pernicious effect of cumulation ... is best avoided by precise instructions to the jury on the admissibility and proper uses of the evidence introduced by the Government;" and finding that "in this Circuit '[s]everance under Fed.R.Crim.P. 14 is an appropriate remedy for a disparity in the evidence only in the most extreme cases.'" (*quoting United States v. Morrow*, 537 F.2d 120, 136, 137 (5th Cir. 1976)).

Defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials. *Id. See also Harrelson*, 754 F.2d at 1178 (rejecting defendant's argument that "it was error to force her to stand trial with others charged with 'heinous' offenses while she herself was charged with only 'a much less serious offense" and describing the argument as "distasteful"). The granting of a severance under Fed. R. Crim. P. 14 rests in the sound discretion of the district court and reversal is not required except upon a showing of "specific and compelling" prejudice. *United States v. Mitchell*, 777 F.2d 248, 260 n.3 (5th Cir. 1986)(*citing United States v. Terrell*, 754 F.2d 1139, 1150 (5th Cir. 1985)). In *United States v. Mitchell,* the Fifth Circuit found that the district court did not abuse its discretion in refusing to grant severance motions when the same evidence admitted at trial would have been admissible in a separate trial to prove the existence and scope of the RICO conspiracy. *Id.*

Defendants Renee Gill Pratt and Mose Jefferson have failed to show "specific and compelling prejudice against which the court [is] unable to afford protection" and that would result in an unfair trial. Defendants generally assert that much of the evidence to be presented at trial is admissible only against Defendants Betty Jefferson and Angela Coleman, presumably on the basis that the majority of charges in the Superseding Indictment are against Betty Jefferson and Angela Coleman. However, all of the counts in the Superseding Indictment are linked in some way to the Count 1 RICO conspiracy, and the factual allegations of those counts (aside from the income tax evasion charges) in the Superseding Indictment, "which are accepted as true absent arguments of prosecutorial misconduct," are analogous to overt acts of general conspiracies and therefore comprise evidence regarding the very existence of the RICO conspiracy. *United States v. Harrelson*, 754 F.2d 1153, 1176 (5th Cir. 1985). *See generally United States v. Mitchell*, 777 F.2d 248, 258-263 (evaluating the sufficiency of the evidence to establish the existence of the RICO enterprise and the racketeering acts, many of which involved some defendants and not others and to varying degrees). Aside from the tax evasion and conspiracy to commit tax evasion charges, Defendants have not articulated what specific evidence might be admissible against Betty Jefferson and Angela Coleman that would not also be admissible against Mose Jefferson and Renee Gill Pratt for purposes of proving the existence of the RICO

enterprise and the enterprise's alleged "pattern of racketeering."

Although evidence of the tax evasion and conspiracy to evade tax evasion charges do not at this time appear to directly constitute evidence of the RICO conspiracy and may therefore be inadmissible against Defendants Mose Jefferson and Renee Gill Pratt, the Court finds, based on the pleadings and oral argument of the parties presently under consideration, that those charges and the facts related to them "are relatively easy to sort" and that adequate jury instructions such as those evaluated by the Supreme Court in *Zafiro* and the Fifth Circuit in *Simmons* can protect against any prejudice that could possibly arise due to spillover.

## B. Severance of Specific Counts

### I. Counts 15-24 (Aggravated Identity Theft) and Counts 30-34 (Income Tax Evasion)

The primary arguments for severance of Counts 15-24, and 30-34 are either misjoinder (Fed. R. Crim. P. 8) or misjoinder and prejudice (Fed. R. Crim. P. 14). Counts 15-24 (Aggravated Identity Theft) and Counts 30-34 (Income Tax Evasion and Conspiracy to Commit Income Tax Evasion) charge only Betty Jefferson and/or Angela Coleman. Mose Jefferson and Renee Gill Pratt argue that these are not objectives of the RICO conspiracy and that there is no basis under Rule 8 to join them in those counts. Alternatively, Defendants argue that these counts should be severed as prejudicial under Rule 14. However, Mose Jefferson provides neither case law on

34

prejudice nor any specific explanations as to how Defendant might be prejudiced by the joinder.[15]

The Government asserts that Counts 15-24 (aggravated identity theft) are evidence of the RICO conspiracy and therefore joinder is proper under Rule 8. Regarding possible prejudice, the Government argues that the facts of the theft will be presented in the course of the evidence introduced to prove the conspiracy, thus a joint trial promotes efficiency and avoids inconsistent verdicts. Furthermore, the Government asserts that a proper jury instruction limiting the jury's consideration of guilt to those defendants charged with the specific offenses enumerated in Counts 2-11 will prevent cross-contamination of the jury's deliberation of Defendant's guilt. *See United States v. Diaz-Munoz*, 632 F.2d 1330, 1337 (5th Cir. 1980)(stating that "the inquiry regarding prejudice is whether the jury can keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him"). The Government does not assert that the tax evasion counts (Counts 30-34) are direct evidence of the RICO conspiracy but argues that judicial economy, witness and government expense, and overall difficulty of presenting the copious exhibits and multitude of witnesses warrant the inclusion of the tax counts with the others

---

[15]Renee Gill Pratt provides some case law and alleges prejudice through the presentation of evidence at trial that would be admissible against Betty Jefferson and/or Angela Coleman but inadmissible against Mose Jefferson. These arguments are discussed in the section on severance of trial.

charged in the Superseding Indictment.

Rule 8(b) specifically states that "[a]ll defendants need not be charged in each count" and Counts 15-24 (aggravated identity theft) appear to be related to the RICO conspiracy. Accordingly, joinder of Counts 15-24 is proper, and there does not appear at this time the existence of any prejudice against Mose Jefferson and Renee Gill Pratt that could not be remedied with lessor tools than severance, such as limiting jury instructions.

As discussed in the section of this Order and Reasons on trial severance, the income tax evasion charges are distinct from the RICO conspiracy charge and associated actions of the enterprise. They are specific to Betty Jefferson (and Angela Coleman with respect to the income tax evasion conspiracy). While the income tax evasion allegedly involves monies gained as a result of actions of the Enterprise, it is a different criminal action in nature than using the proceeds for a specific purpose, such as a mortgage payment. The Court does not at this time find any overwhelming prejudice against Mose Jefferson or Renee Gill Pratt due to the inclusion of these Counts, and it would appear that any prejudice could be easily remedied by specific limiting jury instructions. See *United States v. Mitchell,* 777 F.2d 248, 260 n.3 (5th Cir. 1985)(finding that the district court did not abuse its discretion in refusing to grant severance motions when the same evidence admitted at trial would have been admissible in a separate trial to prove the existence and

scope of the RICO conspiracy).

### ii.  Counts 28 - 29 - False Statements

Mose Jefferson argues that the false statements are not objects of the RICO conspiracy and should be severed under Rule 14 and asserts that "they asperse his not guilty plea to the remaining counts." (Rec. Doc. 119-2).  Defendant cites the Fifth Circuit for the proposition that courts should give careful, deliberate consideration to motions to sever perjury like counts from the underlying counts.  *See United States v. Schilleci*, 545 F.2d 519, 522 (5th Cir. 1977).  The Government argues that Counts 28 and 29 represent two distinct false statements, not a single offense.  The Government also argues against severance, asserting that the statements are self-serving exculpatory statements rather than inculpatory statements.  Further, the Government asserts that Defendant misrepresents the law presented in *Schilleci*.

Defendant's use of *Schilleci* amounts to a misapplication through a rather tenuous connection; the *Schilleci* case neither reached the issue of whether a perjury count should be severed from the underlying charges nor referenced "equivalents" of perjury. Counts 28 and 29 refer to statements Mose Jefferson allegedly made that he "received no financial gain, no salary, and no property from defendant's controlled non-profit, Orleans Metro" and that Defendant did not have check signing authority for Orleans Metro.  These statements, while perhaps not objects of the RICO conspiracy, may

37

constitute evidence of the conspiracy as alleged. Furthermore, it appears to the Court that much of the evidence presented to prove these Counts will also be presented to prove the Count 1 RICO conspiracy. Accordingly, the Court finds that the counts should not be severed at this time.

For the aforementioned reasons and the oral reasons given, the Court **DENIES** Mose Jefferson's Motion to Dismiss, Strike, and Sever (Rec. Doc. 119) without prejudice to reconsider at a future date.

New Orleans, Louisiana, this 30th day of September, 2009.

_____

UNITED STATES DISTRICT JUDGE
